Donald K. PETTY, Jr., Deborah Petty, Joseph Stuber, Martha Stuber, Richard Thieneman, Jean Thieneman, Clifford Thieneman, Agnes Thieneman, Thurston M. Crady, and Robert J. Thieneman, d/b/a Crady & Thieneman & Associates and Village Liquors, II, Inc., Appellants,

v.

James H. BARRENTINE, Darlene J. Barrentine, Stephen D. Abrams, and Theresa Abrams, Appellees.

Court of Appeals of Kentucky.

Feb. 8, 1980.

Robert R. DeGolian, Thurston M. Crady, Louisville, for appellants.

John G. Carroll, Louisville, for appellees.

Before COOPER, HOWERTON and REYNOLDS, JJ.

HOWERTON, Judge.

The appellants appeal from a summary judgment granted by the Jefferson Circuit Court. The appellants brought this action against the Fiscal Court of Jefferson County and others challenging the rezoning of neighboring property from residential to commercial. The appellees became defendants in the circuit court after they purchased the property in question. The appellees pled that they had a vested right to construct and operate a Convenient Food Mart on the property even if the zoning amendment was ultimately declared to be invalid. The trial court severed the vested rights issue and granted judgment for these appellees.

Several issues are presented and discussed on this appeal, but the primary question is whether there was a genuine issue of material fact which would make a summary judgment improper. CR 56.03. The appellants argue that the appellees did not act in good faith which would be necessary for them to acquire a vested right to use the property in a commercial manner.

The property in question was owned by William R. End. On February 25, 1976, he applied to have the property rezoned from R–4 to C–1. On May 6, 1976, the planning commission recommended that the zoning change be denied. End pursued his request, and on December 1, 1977, the fiscal court approved the zoning change, which became final on December 30, 1977.

On February 21, 1978, the appellants and others filed their suit against End, the fiscal court, and the planning commission. End conveyed the property to the appellees on March 1, 1978, at which time he had not been summoned. The appellees obtained a building permit and began construction immediately. On March 7, 1978, the trial court entered a restraining order to enjoin all construction, but Convenient Food Mart and the appellees were not notified until March 16. William End was finally summoned and notified of the civil action on March 20.

On April 27, 1978, the appellees intervened in the action and claimed a vested right, based on their expenditures and obligations which had been incurred between March 1 and March 16. The following day, the restraining order was dissolved by operation of law.

The appellees moved for summary judgment on November 13, 1978, and the trial court entered the judgment in their favor on February 5, 1979. The judgment specifically provided that the defendants-appellees:

. . . be and they are hereby authorized to complete their construction of a Convenient Food Mart on their property, and to open and operate the same, and should this court find the zoning amendment enacted by the defendant, Fiscal Court of Jefferson County, for this property to be invalid for any reason or should the zoning of said property otherwise be changed from its present C–1 Commercial district to any other district, these Defendants may continue that use as a valid nonconforming use.

■ We conclude that it was proper for the trial court to sever the vested rights issue from the zoning issue. CR 21, CR 54.02, and *Young v. White*, Ky.App., 551 S.W.2d 12 (1977). If the trial court correctly concluded that the appellees acquired a vested right, then it also correctly decided that, if the zone was eventually reclassified from C–1 to R–4, the appellees could continue to use the property as a nonconforming use. KRS 100.253.

■ The primary question, however, is whether the appellees acquired a vested right to use the property as a food mart. Between March 1 and March 16, the appellees spent or incurred contractual obligations of $51,505.82. They also had obtained a construction loan with an additional unused balance of $60,000.00. By uncontroverted affidavit they claimed they had acted on the basis of a publicly recorded zoning change, a legally issued building permit,

and without any knowledge of the pending litigation. The first notice they had of any litigation was on March 16, 1978.

The obligations incurred by the appellees would be sufficient to acquire a vested right to complete and use the property for its intended purpose. *Darlington v. Board of Councilmen of City of Frankfort,* 282 Ky. 778, 140 S.W.2d 392 (1940), and *Perkins v. Joint City-County Planning Commission,* Ky., 480 S.W.2d 166 (1972). The parties must have acted in "good faith," however.

We conclude that the trial judge correctly determined that the appellees acted in good faith as a matter of fact and law. The uncontradicted affidavit stated they had acted in good faith. The appellants made no effort to prove otherwise. Although the suit was timely filed, no notice was given through the service of a summons on the owner of the property or by filing a notice of lis pendens pursuant to KRS 382.440. Furthermore, the transfer of title came after the time for appealing the action of the fiscal court. The building permit was properly issued as required by KRS 100.303. The zoning enforcement officer had no notice of the suit, and he had not been enjoined from issuing any permits for the property.

The question of good faith will arise in any case where the owners or buyers of rezoned property rush into any building activity or change of use before the time expires for appealing a rezoning decision. The question of good faith is clearer in this case, however, because the construction did not commence until after the time for an appeal had expired. We do not say that no one can act in good faith by changing the use of property prior to the expiration of time for taking an appeal, but one would certainly have more difficulty proving good faith, if he proceeded under such circumstances.

This case presents a real dilemma. The appellants have tried to prevent the commercialization of this property, and they timely challenged the rezoning in court. If we affirm the judgment, their efforts will be extremely frustrated; although, if the zone is ultimately reclassified to residential, the continued use of the property as a food mart will be nonconforming and therefore limited and impaired. KRS 100.253(2). On the other hand, if we reverse the judgment, the parties who have acted in good faith and expended or obligated themselves for substantial sums would be left in a financially precarious position. Their efforts would be frustrated by the delays caused by the litigation. We are also concerned with the problem of maintaining the integrity of a zone classification.

Practitioners in this area of the law should take heed. Those representing protesters of zoning changes can more thoroughly protect their clients' interests by filing notices of lis pendens, by obtaining quicker service of process, and by seeking injunctions to prevent the issuance of building permits on contested properties. Those individuals representing buyers, owners, builders or lenders must be certain that any new construction or building modifications be done in good faith. Finally, those individuals responsible for enforcing local zoning laws must be extremely cautious in issuing building permits in order to assure that the character and integrity of a zone is maintained.

The summary judgment is affirmed.

All concur.