**Don PERKINS and Rose Du Perkins, his wife, Appellants,**

**v.**

**JOINT CITY–COUNTY PLANNING COM- MISSION and Scott County, Kentucky, Appellees.**

Court of Appeals of Kentucky.

March 17, 1972.

Rehearing Denied June 9, 1972.

Richard M. Compton, Georgetown, for appellants.

Virgil F. Pryor, David L. Knox, Georgetown, for appellees.

GARDNER, Commissioner.

Don Perkins contends the trial court erred in deciding that his property had not obtained the status of a nonconforming use so as to exempt it from compliance with a zoning ordinance. We agree.

No transcript of evidence was made. The findings of fact of the trial court recite that in May and August of 1969 Perkins purchased two contiguous tracts of land consisting of approximately eight acres, upon which was a motel. Perkins intended to convert the motel into apartments and to develop a trailer court on the remaining portion. April 17, 1970, the Joint City-County Planning Commission initiated a zoning "freeze" as to all unincorporated property in Scott County, Kentucky, by restricting all such property to agricultural use. From the time of the purchase of the tracts to the time of the blanket zoning enactment Perkins spent approximately $10,000 converting the motel into apartments. He negotiated with engineers, contractors, finance agencies and utility companies—all in the furtherance of constructing and developing the mobile home park. He obtained a permit from the Kentucky Department of Health. He spent the sum of $2,000, in addition to the use of his own work force, developing the property. At the time of the zoning "freeze" he had spent approximately $68,000, which included the purchase of the property. The estimated cost of the entire project upon completion was $85,000. No trailers were in the park nor had any of the apartments been used by the effective date of the zoning ordinance.

Perkins did not attack the validity of the ordinance in the circuit court, nor does he here, so we do not pass on that question. The planning commission contends that since Perkins did not attack the zoning ordinance but merely sought to have the use of his property declared to be a valid nonconforming use, he could not seek judicial relief, not having exhausted administrative remedies. The thesis is generally correct. Goodwin v. City of Louisville, 309 Ky. 11, 215 S.W.2d 557 (1948). But when the point was not raised at the trial level and was developed only in the briefs, it is not properly before us for review.

The case thrusts upon us a consideration of the applicability of KRS 100.-253(1) which provides:

"The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein."

"Existing use" defies a one-sentence definition. It is stated in Anderson, American Law of Zoning, Vol. 1, section 6.08, at page 236:

"Zoning ordinances usually do not define the uses which are protected from impact of regulations other than to say the uses existing prior to a certain date may be continued. The question of what constitutes an existing use is committed to the Courts with a minimum of legislative help. The Courts, in turn, define existing uses on a case-by-case basis."

While we are confronted with two different properties, namely, the motel which had been converted into apartments at a cost of approximately $10,000, and that portion of the land where over $2,000 had been expended toward developing a mobile home park, apparently Perkins considered it as a single project, as did the trial court. In its brief the planning commission conceded that the motel-apartment project had qualified for nonconforming use and said it would not contest such a determination. Since the case was practiced in the trial

court as if the properties composed a unit, we feel impelled to make our determination on that basis.

■ The general rule is that for property to qualify as nonconforming use the use must have been actually demonstrated prior to the zoning ordinance. Mere contemplation of use of the property for a specific purpose is not sufficient to place it in a nonconforming-use status. Smith v. Juillerat, 161 Ohio St. 424, 119 N.E.2d 611 (1954). Nor is the purchase of the property accompanied by an intent to use it for a specific purpose sufficient. Edelstein v. Dade County, Fla.App., 171 So.2d 611 (1965). An exception to the rule recognized by many jurisdictions is where substantial construction has been made on the property or substantial expenses incurred relating directly to the construction prior to the ordinance. One of the foremost cases espousing the exception is Darlington v. Board of Councilmen, 282 Ky. 778, 140 S.W.2d 392 (1940). There we said:

> "It would seem, therefore, that the right to utilize one's property for the conduct of a lawful business not inimicable to the health, safety, or morals of the community, becomes entitled to constitutional protection against otherwise valid legislative restrictions as to locality, or, in other words, becomes 'vested' within the full meaning of that term, when, prior to the enactment of such restrictions, the owner has in good faith substantially entered upon the performance of the series of acts necessary to the accomplishment of the end intended."

In Amereihn v. Kotras, Md., 194 Md. 591, 71 A.2d 865 (1950), it is said:

> "It is well established law that if a person, prior to the time zoning regulations are effective, commences to build on his property a building for the purpose of conducting light manufacturing (as in this case) and expends money in the erection of such a building, or in partially erecting such a building, subsequent zoning regulations cannot prevent him from completing the building and conducting light manufacturing therein."

Appeal of Sawdey, 369 Pa. 19, 85 A.2d 28 (1951), was concerned with a zoning ordinance which designated a certain area as a "Mixed Occupancy" district in which restaurants, hotels, etc., were allowed but provided that "No license for the dispensing of intoxicating liquor in any form is permitted." A hotel building was approximately half completed when the zoning ordinance was adopted. The court said:

> "On this first point it is admitted that there had been substantial progress in the construction of the hotel and considerable expenditures made and contracted for prior to the adoption of the ordinance. Retroactive legislation is so offensive to the Anglo Saxon sense of justice that it is never favored."

Yokley, Zoning Law and Practice, Third Edition, Vol. 2, section 16-4 (Supplement), has this to say:

> "To obtain a vested interest in a nonconforming use, a person, prior to the effective date of the regulation or ordinance making such use nonconforming, and while violating no existing law or regulation, must cause either substantial construction to be made thereon or incur substantial liability relating directly thereto, or both."

An effort necessarily must be made by the courts when zoning problems arise to seek a proper balance between the welfare of the public and the rights of individuals. It is recalled that some 12 months before the enactment of the zoning ordinance Perkins actively embarked on plans to convert the motel into apartments and to establish a mobile home park—all as a business complex. This required his performing innumerable details. The estimated cost of converting the motel into apartments and constructing the park was $29,000, more than $12,000 of which had been paid at the time the ordinance was

enacted. Under the holding of Darlington v. Board of Councilmen, and other cases cited above, we are of the opinion a non-conforming use was established and the judgment of the trial court to the contrary was clearly erroneous.

The judgment is reversed with directions to enter a judgment in conformity with this opinion.

All concur.